UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No.: 8:14-CR-133-T-23EAJ

TOBORUS DONTAY CUNNINGHAM

_____/

REPORT AND RECOMMENDATION

Before the Court are Defendant's **Motion to Suppress for Lack of Probable Cause to Search Residence** (Dkt. 28) and the United States' **Response in Opposition** (Dkt. 38).[1] Following an evidentiary hearing, the undersigned recommends that the motion to suppress be denied.

Background

On April 3, 2014, Defendant was indicted for intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).  Defendant seeks to suppress all evidence, including cocaine, currency, and a firearm, seized by law enforcement officers from his residence after his arrest.  Both Defendant's arrest and the search of his residence were pursuant to state court warrants.

Findings of Fact[2]

The following facts are established by a preponderance of credible evidence:

1.      On November 14, 2013, a confidential informant ("CI") met with a detective for the Sarasota

        Police Department and a special agent for the Drug Enforcement Administration.  The CI

_____

[1] The motion has been referred to the undersigned for a report and recommendation (Dkt. 30). See 28 U.S.C. § 636(b); Local Rules 6.01(b) and (c), M.D. Fla.

[2] Facts 1 through 8 are taken from the affidavit for a warrant to search Defendant's residence. The remaining facts are taken from the testimony at the evidentiary hearing.

informed the law enforcement officers about drug sales occurring at a car shop known as Well Known Customs in Oneco, Florida.  The CI informed them that Defendant, who is the manager of Well Known Customs, was the number one source of supply for drug dealers in the Sarasota area.

2.     The CI reported that Defendant was selling cocaine, pills, and heroin, using Well Known Customs as a distribution site.

3.     After investigation, law enforcement officers planned a "controlled buy walk purchase" of cocaine from Defendant.[3]  On December 12, 2013, the CI met with Defendant in a Wal-Mart parking lot in Sarasota.  Defendant was driving a white 2012 Hyundai Sonata, Florida tag 731-LCP.  The CI purchased two ounces of cocaine from Defendant for $2,400.00.  The transaction was recorded using audio and video recording devices.  Subsequent testing of the purchased substance was positive for the presence of cocaine.

4.     On January 30, 2014, law enforcement officers planned a second "controlled buy walk purchase" of cocaine from Defendant.  The CI met with Defendant in an office at Well Known Customs.  Defendant arrived in a white 2012 Hyundai Sonata, Florida tag 731-LCP.  Defendant's girlfriend was also present.  The CI purchased one-half ounce of cocaine from Defendant for $600.00.  The transaction was recorded using audio and video recording devices.  Subsequent testing of the purchased substance was positive for the presence of cocaine.

5.     Various law enforcement database checks revealed that Defendant lived at 3711 101st

---

[3] A "controlled buy walk purchase" is a controlled purchase of illegal drugs where the target of the investigation is allowed to depart rather than being arrested, according to Sgt. Robert Armstrong ("Sgt. Armstrong") of the Sarasota Police Department.

Avenue East, Parrish, Florida.

6.       On January 31, 2014, Sgt. Armstrong observed the white 2012 Hyundai Sonata, Florida tag 731-LCP, parked in the driveway of the residence located at 3711 101st Avenue East, Parrish, Florida.  The white 2012 Hyundai Sonata, Florida tag 731-LCP, is registered to Defendant's girlfriend, Angelica Martinez, who also resides at 3711 101st Avenue East, Parrish, Florida.

7.       On February 7, 2014, a judge of the Twelfth Judicial Circuit in and for Sarasota County, Florida  issued search warrants for Defendant's residence and Well Known Customs.[4]  The warrant to search Defendant's residence authorized the seizure of books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase, and/or distribution of controlled substances, dated from 2013 to the present; address and telephone books; cellular telephones, including a search of the contents/data within those devices; U.S. currency; and photographs of criminal associates, assets, and/or controlled substances dated from 2013 to the present.

8.       The affidavit supporting the warrant to search Defendant's residence indicated that, based on the affiants' training, experience, and participation in other drug investigations involving large amounts of controlled substances, drug traffickers are known to keep books, records, receipts, notes, ledgers, and other documents where they have ready access to them.  Among the places where drug traffickers have ready access to documents are their residences and

---

[4] The warrant to search Defendant's residence was supported by an affidavit by co-affiants, Sgt. Armstrong of the Sarasota Police Department and Special Agent Gary Corbett of the Drug Enforcement Administration.  At the hearing, Sgt. Armstrong testified that he was recently promoted to sergeant, but he was a detective with the Sarasota Police Department at the time the warrant was issued.

businesses.

9.      On the morning of February 11, 2014, law enforcement officers planned to arrest Defendant at Well Known Customs.[5]  When Defendant had not shown up at the business by 10:45 a.m., law enforcement officers went to Defendant's residence.

10.     At Defendant's residence, Sgt. Armstrong observed Defendant going back and forth between his residence and the white 2012 Hyundai Sonata while using a cellular telephone. Defendant was shirtless and shoeless, but was wearing long pajama pants.

11.     Sgt. Armstrong had knowledge that Defendant previously possessed weapons and that there were pit bulls in the residence.

12.     Law enforcement officers engaged in a ruse to lure Defendant from the residence by pretending that a vehicle hit the mailbox in front of the residence.  An officer knocked on the door of the residence to lure Defendant outside.

13.     At approximately 1:45 p.m., law enforcement officers arrested Defendant in the front yard of the residence.

14.     Upon Defendant's arrest, six to eight law enforcement officers conducted a protective sweep of the residence to secure the pit bulls in the garage and to ensure there were no other persons in the residence.

15.     During the protective sweep of the residence, law enforcement officers discovered a firearm and two bags of cocaine in plain view in a bedroom.  The cocaine was located on a nightstand, and the firearm was on a dresser approximately three feet away from the cocaine.

_____

[5] An arrest warrant for Defendant was issued on December 30, 2013 by a judge of the Twelfth Judicial Circuit in and for Sarasota County, Florida.

16.     After his arrest and the protective sweep, Defendant was brought into the dining room of the

        residence.  At some point during his detention, the dining room table collapsed as Defendant

        leaned on it, and Defendant was brought outside to the front of the residence.[6]

17.     Sgt. Armstrong testified that drug dealers do not normally store drugs at their residences due

        to risks of theft from other drug dealers or previous purchasers, as well as risk of their

        discovery in the event police execute a search warrant on the premises.  He also testified that,

        in his experience, drug traffickers keep documents and other records in their homes where

        they do not sell narcotics.

18.     Sgt. Armstrong testified that he believed the warrant to search Defendant's residence to be

        lawful.  He also testified that he has executed hundreds of search warrants and approximately

        ten that sought documents only.  He did not have any direct knowledge that there would be

        narcotics in the residence or that Defendant was selling narcotics from the residence.

19.     While executing the search warrant of the residence, law enforcement officers also

        discovered $25,000.00 in cash, approximately one kilogram of cocaine stored in a safe, and

        a small amount of cocaine (approximately one-half ounce) stored in a speaker.  Law

        enforcement officers also found financial documentation under a bed and ledger files.

---

[6] Kimberly Brooks ("Ms. Brooks"), a resident of the neighborhood where Defendant's residence is located, testified that she observed Defendant sitting on a chair in the driveway of the residence in handcuffs as she drove by the residence.  She returned to the residence ten minutes later with two family members and spoke with Defendant.  While Ms. Brooks spoke with Defendant, law enforcement officers brought Defendant back into the residence and shut the front door.  Ms. Brooks' testimony provided no relevant detail to the issue of the search's validity.

## Conclusions of Law

Defendant alleges that evidence of cocaine, U.S. currency, and a firearm were obtained as a result of an illegal search. Specifically, Defendant says the affidavit used to obtain a search warrant of his residence failed to establish probable cause. Defendant contends that the statement of the law enforcement officers connecting Defendant's criminal activity and his residence is "completely conclusory" and "is not supported by any empirical evidence or scientific study, and is therefore impermissible to use to establish probable cause." (Dkt. 28 at 4)

The Government responds that the motion should be denied because the cocaine and handgun were found in plain view during a lawful protective sweep while executing an arrest warrant,[7] the search warrant was valid because the affidavit sets out sufficient probable cause, and, even if the search warrant were technically deficient, the officers relied in good faith on it. (Dkt. 38 at 4)

**1.**     Probable cause determination

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

---

[7] "A protective sweep 'is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding.'" United States v. Delancy, 502 F.3d 1297, 1306 (11th Cir. 2007) (citing Maryland v. Buie, 494 U.S. 325, 327 (1990)). For the reasons discussed below, the Court determines that law enforcement officers had a valid warrant to search Defendant's home for documents, and the Court need not determine whether the protective sweep was lawful incident to Defendant's arrest. In any event, a protective sweep of Defendant's residence was appropriate, given the specific facts known to law enforcement officers, to make sure no other individuals were in the residence and that any firearms or dogs were secured prior to executing the search warrant. See U.S. v. Folk, --- F.3d ----, 2014 WL 2611272, at *2, *4 (11th Cir. June 12, 2014) (shotgun and rifle in master bedroom closet lawfully observed during protective sweep prior to execution of search warrant for narcotics).

describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The validity of a warrant affidavit is determined by: "(1) demonstration of a connection between the defendant and the location to be searched; (2) demonstration of a link between the location and criminal activity; and (3) demonstration of the informant's veracity and basis of knowledge." United States v. Davis, 313 F.3d 1300, 1303 (11th Cir. 2002) (per curiam) (citing United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002)).

"Probable cause to search a residence requires some nexus between the premises and the alleged crime." United States v. Bradley, 644 F.3d 1213, 1263 (11th Cir. 2011). "Evidence that the defendant is in possession of contraband that is of the type that would normally expect to be hidden at their residence will support a search." United States v. Anton, 546 F.3d 1355, 1358 (11th Cir. 2008) (citing United States v. Jenkins, 901 F.2d 1075, 1080–81 (11th Cir. 1990)). "[A] police officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that evidence is likely to be found in a suspect's residence satisfies probable cause." Bradley, 644 F.3d at 1263–64.  A statement that "[drug] dealers often store at their home illicit cash proceeds, receipts, and other evidence of their crimes," based on an affiant's knowledge, training, and experience, along with evidence that a defendant has violated the law, can establish probable cause to search the defendant's home. United States v. Joseph, 709 F.3d 1082, 1099-100 (11th Cir. 2013) cert. denied, 134 S. Ct. 1273 (U.S. 2014) reh'g denied, 134 S. Ct. 1929 (U.S. 2014); see also United States v. Whitner, 219 F.3d 289, 297-99 (3rd Cir. 2000) (collecting cases where "a number of other courts of appeals have held that evidence of involvement in the drug trade is likely to be found where the dealers reside").

Here, the affidavit supporting the search warrant established sufficient probable cause to

search Defendant's residence.   First, law enforcement officials, using several law enforcement databases, determined that Defendant's residence was 3711 101st Avenue East, Parrish, Florida. This sufficiently established a connection between Defendant and the location to be searched. Second, law enforcement officials established a sufficient link of Defendant's alleged crimes to the residence.   The vehicle he was driving during the two "controlled buy walk purchases" was parked at the residence.   Furthermore, the affiants' statement that drug traffickers store documents and other items related to drug sales at their residences and businesses was based on their collective experience in drug trafficking investigations and knowledge that Defendant had conducted two drug transactions with a CI.   Despite Defendant's contention, the statement in the affidavit that drug dealers keep evidence of their crimes in their homes, along with the other information in the affidavit, is sufficient to establish probable cause.

Accordingly, the information provided in the affidavit was sufficient to supply "a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, *i.e.*, a 'safe yet accessible place.'" United States v. Kapordelis, 569 F.3d 1291, 1310-12 (11th Cir. 2009) (quoting United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999)).

Additionally, the plain view doctrine permits a warrantless seizure where: (1) an officer is lawfully located in the place from which the seized object could be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the incriminating character of the item is immediately apparent. Horton v. California, 496 U.S. 128, 135 (1990).   "[A] search may be as extensive as reasonably required to locate the items described in the warrant." United States v. Wuagneux, 683 F.2d 1343, 1352 (11th Cir. 1982); see also United States v. Smith, 459 F.3d 1276, 1291 (11th Cir. 2006).

8

As the drugs and firearm were in plain view in the bedroom, they were lawfully seized even though not specified in the search warrant.  Additional cocaine was found in a safe in the residence. Although this evidence was not in plain view, the seizure was proper because a safe is a location within the residence that law enforcement could lawfully enter to look for the documentary evidence listed in the warrant.  United States v. Martinez, 949 F.2d 117, 1120 (11th Cir. 1992).

**2.**      The Leon good faith exception

United States v. Leon, 468 U.S. 897 (1984), stands for the principle that "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002).  There are only four situations where Leon's good faith exception does not apply:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

Martin, 297 F.3d at 1313.

Defendant has not shown that the affidavit is so lacking in indicia of probable cause that the officers' reliance on that warrant was unreasonable and could not reasonably be relied upon by a trained officer.  As already determined, the affidavit sufficiently established probable cause but, even if it were invalid, the law enforcement officers' reliance on the warrant was reasonable and in good faith.

The Court may consider information outside the four corners of the affidavit to determine

whether the good faith exception applies. Id. at 1318.   Therefore, in addition to the facts contained in the affidavit, Sgt. Armstrong testified that he has executed hundreds of warrants, approximately ten of which were document warrants.  He had never had a document warrant rejected.  Furthermore, in his experience, although it is risky for drug dealers to keep narcotics in their residence because of the risks of robbery or law enforcement searches, drug dealers often keep records and other documents of their crimes in their homes.  Therefore, even assuming the warrant affidavit did not provide adequate probable cause for a warrant to be issued, the law enforcement officers could reasonably rely on the warrant.  The Leon good faith exception is applicable in the instant case.

### Conclusion

Accordingly, and upon consideration, it is **RECOMMENDED** that:

(1)    Defendant's Motion to Suppress for Lack of Probable Cause to Search Residence (Dkt. 28) be **DENIED.**


**Date:  June 20, 2013**.

ELIZABETH A JENKINS
United States Magistrate Judge


### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

**Any party objecting to any factual findings in the  report and recommendation shall**

**file a copy of the transcript of the hearing on the motion to suppress.**